```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

TRISTIN N. OSADCHE, : 
: CIVIL ACTION NO. 3:17-CV-850
    Plaintiff, :
: (JUDGE CONABOY)
    v. :
:
NANCY A. BERRYHILL, :
Acting Commissioner of :
Social Security, :
:
    Defendant. :
:
_____

## **MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI. (Doc. 1.) Plaintiff protectively filed a DIB application on August 9, 2013; she filed for SSI on September 15, 2013. (R. 18.) In both applications, Plaintiff claimed disability beginning August 9, 2013. (*Id.*) After she appealed the initial denial of the claims, a hearing was held on June 5, 2015, and Administrative Law Judge ("ALJ") Frank Barletta issued his Decision on September 24, 2015, concluding that Plaintiff had not been under a disability during the relevant time period. (R. 31.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on June 5, 2017. (R. 1-7, 57.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on May 12, 2017. (Doc. 1.) She

asserts in her supporting brief that the Acting Commissioner's determination is error for the following reasons: 1) the ALJ did not consider crucial evidence of Plaintiff's hospitalization for a suicide attempt; 2) the ALJ erroneously assigned little weight to the consulting psychologists's assessments; 3) the ALJ made erroneous credibility determinations; and 4) the ALJ failed to present a hypothetical question to the VE containing all of Plaintiff's credibly established limitations. (Doc. 12 at 3, 9.)

## **I. Background**

Plaintiff was born on December 29, 1980, and was thirty-two years old on the alleged disability onset date. (R. 30.) She has a high school education as well as associates degree and reports past relevant work as a kitchen helper, medical lab technician, phlebotomist, and hostess. (*Id.*) Plaintiff alleges that her inability to work is limited by bipolar disorder type 1 mixed with psychosis, anxiety, depression, chronic pain, and hypothyroidism. (R. 188.)

### *A. Medical Evidence*

Plaintiff's claimed errors relate to specific evidence of record. The Court's review will focus on that and evidence Defendant relies upon in response.

Plaintiff has a long history of treatment for mental health problems. The record contains evidence of an eight-day admission in 2004 based on suicidal ideation and statements. (R. 290-96.)

Her discharge diagnosis included the following: major depression, recurrent; generalized anxiety disorder; marijuana, Oxycontin, Klonopin, and Xanax dependence. (R. 290.) Plaintiff was hospitalized again in October 2006. (R. 335-40.)

From 2010 through August 2013, Plaintiff participated in outpatient psychiatric care with Uchenna Uzoukwu, M.D. (R. 371-85.) Plaintiff's diagnoses included bipolar disorder, generalized anxiety disorder, social phobia, and borderline personality disorder. (*Id.*) Plaintiff's medications included Abilify, Lithium, Zoloft, and Klonopin. (*Id.*)

In January 2014, Plaintiff's condition worsened and she was admitted to Wilkes-Barre Behavioral Hospital for suicidal ideation on January 3, 2014. (R. 416-25.) Her diagnoses were major depressive disorder, borderline personality disorder, and cannabis abuse. (R. 416.) She was discharged four days later at which time she was no longer suicidal, her anxiety and mood had improved, and her functioning had improved. (R. 417.)

Through 2014 and 2015, Plaintiff was treated by a psychiatrist and therapist at Community Counseling Services ("CCS"). (R. 471-576.) She sometimes reported increased symptoms and also reported that medications were helping. (*Id.*) With some exceptions (R. 496, 512), mental status examinations indicated euthymic or neutral mood, normal thought content, average intellectual functioning, and fair insight and judgment. (*Id.*)

3

Plaintiff was also seen by the Lehigh Valley Physician Group in 2014 and 2015 when she presented with physical and mental health complaints. (*See* R. 451-59, 620-23.) In August 2014 she reported anxiety, problems interacting with others, and an inability to handle situations appropriately. (R. 457.) The Plan indicated that her psychiatrist's office would be contacted to let them know of Plaintiff's suicidal thoughts and the need for close follow up. (R. 458.)

Notes from Plaintiff's February 19, 2015, Lehigh Valley visit state that Plaintiff had two suicide attempts in January and February and she also reported a manic episode. (R. 453.) Details of one attempt were provided as well as a notation that she had looked online for different ways to kill herself. (*Id.*) Plaintiff also reported that she was trying to get disability because she did not feel that she could work more than four hours per day. (*Id.*)

At a Lehigh Valley follow up visit on June 22, 2015, Plaintiff reported that she was not doing well, she still had a lot of suicidal thoughts, and she was having symptoms despite taking her medications. (R. 622.) Notes indicated that the provider spoke with a crisis intervention worker at CCS who recommended that Plaintiff go to the ER for crisis evaluation. (R. 623.)

On July 14, 2015, after Plaintiff's father found her with a plastic bag over her head, Plaintiff was admitted to the Horsham Clinic due to an increase in depressed mood and suicidal ideation.

4

(R. 624.)  History notes state that Plaintiff had multiple previous hospitalizations.  (*Id.*)  Hospital Course notes indicate that Plaintiff did not want to be in the hospital and she was discharged on July 17, 2015, when her 72-hour notice to leave the hospital was up.  (R. 625.)  Discharge condition notes included the conclusion that there was no indication for continued hospitalization in the inpatient unit and her prognosis was good.  (R. 626.)

***B. Opinion Evidence***

**1.   Examining Consultant Opinions**

On April 21, 2011, Plaintiff saw David F. O'Connell, Ph.D., for a consultative psychological examination.  (R. 362-67.)  Dr. O'Connell noted that Plaintiff found her job as a medical lab technician very stressful and she was fired from her last job for making mistakes.  (R. 363.)  He recorded that she had a history of suicidal attempts by overdose and hanging herself but she did not have suicidal thoughts or plans at the time of the evaluation. (*Id.*)  Mental status exam findings included affect appropriate to ideation with mildly constricted range and moderately anxious mood. (*Id.*)  Dr. O'Connell diagnosed bipolar I disorder, mixed with a history of psychosis, and anxiety disorder, not otherwise specified.  (R. 364.)  He assessed a GAF score of 39.  (*Id.*) Regarding the effects of her impairments on functioning, Dr. O'Connell noted the following: activities of daily living included the ability to do household chores, lift light to moderate weight,

cook a meal, and take care of personal hygiene; in the social functioning sphere, Plaintiff was able to conduct herself appropriately with family, friends, neighbors, the general public, and with past coworkers and supervisors since she had been on mood stabilizing, antipsychotic, and antidepressant medications; her concentration, persistence and pace included the ability to "listen to Radio Life Style" and read the newspaper. (*Id.*) In a check-the-box form, Dr. O'Connell found that Plaintiff was moderately limited in her ability to carry out detailed instructions and make judgments on simple work-related decisions. (R. 366.) He found she had marked limitations in her ability to respond appropriately to work pressures in a routine work setting and respond appropriately to changes in a routine work setting. (*Id.*)

Plaintiff had another consultative psychological evaluation on December 20, 2013. (R. 402-13.) Sarah Hasker, Psy.D., recorded that Plaintiff felt depressed along with anhedonia, she reported frequent panic attacks, chronic suicidal ideation, and a history of manic symptoms. (R. 404.) Mental status exam included the findings that Plaintiff demonstrated psychomotor agitation, dysphoric mood, and labile affect. (R. 405.) Dr. Hasker noted that Plaintiff appeared to have deficient coping skills with poor impulse control, her judgment appeared to be impaired, her comprehension and insight appeared to be limited, and she was aware of her need for treatment. (R. 405.) Dr. Hasker's diagnostic

6

assessment included the following: bipolar disorder type 1, current depressed; history of psychosis; anxiety disorder, not otherwise specified; and a GAF score of 40. (*Id.*) Concluding that Plaintiff's prognosis was guarded, Dr. Hasker added that Plaintiff would benefit from psychological and psychiatric treatment. (R. 406.) The reported effects of Plaintiff's impairment on activities of daily living included difficulty managing finances, periodic difficulty maintaining grooming and hygiene, and she often forgot to take her medications regularly. (*Id.*) In the social functioning sphere, Plaintiff reported that it was difficult for her to get along with others, she had a tendency to argue and fight with a hitory of intense verbal and physical altercations with family, friends, and strangers, and she had difficulty interacting with persons in authority. (*Id.*) Plaintiff also described difficulty with concentration, persistence, and pace, stating that she needed assistance in carrying out instructions, she was easily distracted when trying to complete a task (as evidenced by her mistakes when working as a lab technician), she tended to be impulsive in her decision making, and she performed at a slow pace. (*Id.*)

In a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated December 20, 2013, Dr. Hasker opined that Plaintiff had marked limitations in her ability to make judgments on simple work-related decisions, understand and remember complex

instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors, interact appropriately with coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (R. 411-12.) Dr. Hasker noted that these determinations were based on Plaintiff's reports and clinical observation. (*Id.*)

2. **State Agency Opinion**

State agency consultant James Vizza, Psy.D., completed a Mental Residual Functional Capacity Assessment on January 28, 2014. (R. 114-117.) He opined that Plaintiff had moderate limitations in some understanding and memory categories; she had moderate limitations in some concentration and persistence categories; she had moderate limitations in some social functioning categories; and she had moderate limitations in some adaptation categories. (R. 115-16.) Dr. Vizza concluded that Plaintiff was able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from her impairment. (R. 116.)

*C. ALJ Decision*

In his September 24, 2015, Decision, ALJ Frank Barletta concluded Plaintiff had the following severe impairments: depression, bipolar disorder, PTSD, social phobia, borderline personality disorder, a substance use disorder, and degenerative disc disease of the lumbar spine. (R. 21.) He further concluded

8

Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (*Id.*) He determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation which had been of extended duration. (R. 22.)

ALJ Barletta assessed Plaintiff to have the residual functional capacity ("RFC") for light work, except that she

> could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds; could sit and stand/walk for up to 6 hours, each, in an 8-hour workday; could push and pull under the same lifting/carrying restrictions; could occasionally reach overhead with her bilateral upper extremities; could occasionally climb ramps and stairs; could never climb ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid exposure to unprotected heights and dangerous moving machinery; could have occasional contact with humidity, wetness, and vibrations; could perform simple and routine tasks and make simple work-related decisions; could have occasional contact with supervisors, coworkers, and the public; and could have occasional changes in the work setting.

(R. 23.)

Regarding opinion evidence from mental health professionals, ALJ Barletta assigned little weight to the opinions of Dr. O'Connell and Dr. Hasker. (R. 26.) He assigned significant weight to Dr. Vizza's opinion. (R. 28.)

After finding that Plaintiff was not able to perform her past

9

relevant work, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 30-31.) Therefore, ALJ Barletta concluded Plaintiff had not been under a disability as defined in the Social Security Act at any time from August 9, 2013, through the date of the decision (R. 31.)

## **II. Disability Determination Process**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

10

for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 30-31.)

11

## **III. Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings

13

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## **IV. Discussion**

As set out above, Plaintiff asserts the Acting Commissioner's determination is error for the following reasons: 1) the ALJ did not consider crucial evidence of Plaintiff's hospitalization for a suicide attempt; 2) the ALJ erroneously assigned little weight to the consulting psychologists's assessments; 3) the ALJ made erroneous credibility determinations; and 4) the ALJ failed to present a hypothetical question to the VE containing all of Plaintiff's credibly established limitations. (Doc. 12 at 3, 9.)

### *A. Post-Hearing Evidence*

Plaintiff first maintains the ALJ did not consider significant medical evidence including her July 2015 hospitalization for a

14

suicide attempt. (Doc. 12 at 4 (citing R. 624-26).) Defendant acknowledges that the evidence was part of the record before the ALJ and the ALJ did not directly consider it, but Defendant argues the evidence did not undermine the ALJ's findings. (Doc. 15 at 14-17.) The Court concludes that this claimed error is cause for remand.

As set out above, the ALJ was obligated to analyze all probative evidence and explain his consideration of probative exhibits. *Burnett*, 220 F.3d at 119-20; *Dobrowolsky*, 606 F.2d at 406. Defendant does not argue that the evidence was not probative, but states that the ALJ's failure to address the evidence does not mean he did not consider it. (Doc. 15 at 14.) Defendant inferentially suggests that, if error, the failure to address the evidence was harmless because the July suicide attempt and hospitalization represent another intermittent period of exacerbated symptoms recognized by the ALJ. (Doc. 15 at 14 (citing R. 28, 29).)

The Court cannot agree with Defendant's assessment because the July 2015 exacerbation and hospitalization undermine ALJ Barletta's reasons for discounting the severity of the limitations alleged by Plaintiff. For example, ALJ Barletta concluded that Plaintiff's "symptoms during the period of review were not acute or extreme" and her symptoms "remained moderate in degree" after her hospitalization in January 2014. (R. 29.) He also assigned little

weight to GAF scores below 50 and significant weight to higher GAF scores based on Plaintiff's "only intermittent and very infrequent period of exacerbated symptomatology." (R. 28.) Similarly, he assigned significant weight to Dr. Vizza's opinion that Plaintiff could meet the basic demands of competitive work on a sustained basis despite limitations resulting from her mental impairment because the "evidence of record confirms that the claimant suffers from more moderate symptomatology, controlled by medication management." (R. 28.) Contrary to these assessments, clearly Plaintiff's July 2015 suicide attempt and hospitalization show that she experienced more acute or extreme symptoms after her January 2014 hospitalization and that symptoms were not consistently controlled by medication management during the relevant time period.

Because ALJ Barletta failed to discuss probative evidence and the failure was not harmless, the Court cannot say his findings are supported by substantial evidence. Therefore, this matter must be remanded to the Acting Commissioner for further consideration.

## B. *Opinion Evidence*

Plaintiff avers that the ALJ erred in assigning limited weight to the consulting psychologists' opinions. (Doc. 12 at 6.) Defendant responds that the ALJ did not err on this basis and, read as a whole, the record shows the ALJ sufficiently explained his conclusions regarding the opinions at issue. (Doc. 15 at 18-20.)

Because the matter must be remanded for the reasons discussed above, the Court concludes that reconsideration of the weight assigned opinion evidence is also warranted. In doing so, the ALJ is directed to provide a detailed explanation for the weight assigned opinion evidence in the context of each opinion. The ALJ is also directed to be cognizant of the guidance provided in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000): "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." *Id.* at 319. Furthermore, in the case of mental health impairments, it is recognized that a medical source's opinion which relies on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions are necessarily and largely diagnosed on the basis of a patient's subjective complaints. *Schickel v. Colvin*, No. 14 C 5763, 2015 WL 8481964, at *11 (N.D. Ill. Dec. 10, 2015); *Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012).

## *C. Credibility Determinations*

Plaintiff asserts that the ALJ erroneously found Plaintiff's testimony not credible and failed to make a credibility finding with regard to the statements of her witnesses. (Doc. 12 at 9.) Defendant responds that the ALJ's subjective symptom evaluation is supported by substantial evidence. (Doc. 15 at 20.) The Court concludes that the other matters requiring remand indicate that a

17

reevaluation of subjective symptom evaluation is warranted. The
ALJ's overall explanation that the medical evidence did not support
the severity of her claims (R. 29) is inadequate given the
importance of subjective complaints in mental health cases in
general, *see Morales*, 225 F.3d at 319, and the specific problem
here that the ALJ did not properly evaluate evidence of record.
Furthermore, reconsideration of third party evidence is required
because the reasons provided by ALJ Barletta for discounting the
report of Plaintiff's boyfriend, Brent Light (*see* R. 27), are
inconsistent with the persuasive guidance set out in *Maelllaro v.
Colvin*, No. 3:12-CV-1560, 2014 WL 2770717, at *12 (M.D. Pa. June
18, 2014): to reject third party evidence because it is from a lay
third party associated with the plaintiff defeats the purpose of
submitting third party statements and runs contrary to express
rulings including SSR 96-7p.

### D. *Vocational Expert Hypothetical*

Plaintiff maintains that the ALJ failed to include all of her
credibly established limitations in the hypothetical question posed
to the vocational expert ("VE"). (Doc. 12 at 15.) Plaintiff
specifically points to the limitations assessed by Dr. O'Connell
and Dr. Hasker and those described by Mr. Light. (*Id.*) Based on
the need for reconsideration of the evidence and subjective symptom
evaluation, the Court cannot conclude that the VE's answer to the
hypothetical question posed by ALJ Barletta constituted substantial

evidence in support of the ALJ's decision.

## **V. Conclusion**

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration consistent with this Memorandum. An appropriate Order is filed simultaneously with this action.

<pre>
                                S/Richard P. Conaboy
                                RICHARD P. CONABOY
                                United States District Judge
</pre>

DATED: March 1, 2018